The Commonwealth urges on appeal that c. 30, § 58, authorizes assault *842 pay to “an employee” who is injured while in the performance of his duty and that Moog became ineligible for such pay when he resigned from his job during the period of his injury-related workers’ compensation eligibility.[2] The provision should be seen as analogous to G. L. c. 41, § 111F, the Commonwealth argues. That statute gives full pay to police and firefighters injured in the line of duty, but a resignation by the employee terminates all benefits under it. Moog argues, and the Superior Court judge agreed, that the intent of the assault pay law is to provide certain injured State employees with full pay for the duration of the time during which they receive workers’ compensation benefits. A resignation would not terminate workers’ compensation eligibility, so such a cutoff should not be read into c. 30, § 58. The Commonwealth counters that the assault pay statute, like c. 41, § 111F, stands apart from c. 152, the State’s workers’ compensation scheme. Therefore, the argument concludes, c. 30, § 58, must be construed without reference to c. 152.
First, regardless of its placement among the General Laws, § 58 of chapter 30 relates to and meshes with the provisions of c. 152. The essence of the assault pay paragraph of § 58 is that it makes special provision for certain injured State employees who “would be entitled to benefits under said chapter one hundred and fifty-two.” It cannot plausibly be said that workers’ compensation and assault pay are unrelated benefit programs.[3] To the contrary, an eligible State employee (see G. L. c. 152, § 69) who is injured in the line of duty receives workers’ compensation benefits plus — if he is injured by “patients or prisoners in his custody” — the dollar “difference between the weekly cash benefits. . . and his regular salary.” Indeed, the exclusion of “members of a police or fire force” from general public employee eligibility, see c. 152, § 69, and Poporo v. Provincetown, 34 Mass. App. Ct. 625, 626 n.5 (1993), suggests that c. 41, § 111F, is different from, not analogous to, c. 30, § 58.
Second, under chapter 152:
“Where the employee is claiming compensation for total or partial incapacity after a period during which he was gainfully employed, it is immaterial whether the employee lost his job because of a layoff, strike, voluntary resignation, or business recession. Whatever the reason for his predicament, he is entitled to compensation if he is totally or partially incapacitated from earning his former wage, by reason of the effects of his industrial injury.” Locke, Workmen’s Compensation § 325 (2d ed. 1981).
Similarly, “[vjoluntary termination of his employment does not warrant the *843 denial of an employee’s claim for partial disability compensation.” Seymour’s Case, 6 Mass. App. Ct. 935, 936 (1978). In sum, we agree with the Superior Court judge that Moog’s entitlement to assault pay continued for the period of his eligibility for workers’ compensation benefits.
Jason Barshak, Assistant Attorney General, for the Commonwealth.
Joseph M. Burke for the plaintiff.
The Superior Court judge also ruled that, during the period of Moog’s eligibility for workers’ compensation benefits, his “assault pay benefits must rise in accordance with the workmen’s compensation benefits.” The Commonwealth urges in its reply brief that, even if Moog is entitled to any assault pay after his resignation, it should not rise above the difference between his workers’ compensation benefits and his regular salary at the time of his injury. This issue was not argued in the Commonwealth’s principal brief, so we need not consider it. Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). See Travenol Labs., Inc. v. Zotal, Ltd.., 394 Mass. 95, 97 (1985).
Last, we agree with the Commonwealth that there is no question before us concerning Moog’s entitlement, if any, should his status change from temporary to permanent total disability.

Judgment affirmed.

 It is undisputed that Moog was eligible for assault pay under the terms of the statute: he was a State mental health worker who contracted hepatitis after a patient bit him.

 Indeed, in an opinion dated June 30, 1988, the Attorney General wrote: “I find it reasonable to conclude that court officers are eligible to receive worker’s compensation under G. L. c. 152. Thus, if a court officer would be eligible to receive worker’s compensation as a result of injuries received as defined in § 58, that individual would be eligible to receive assault pay benefits.” Opinion of the Attorney General, Rep. A.G., P.D. No. 12 at 72-73 (1988).