NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11949

MARK MARCHAND  vs.  DEPARTMENT OF CORRECTION & another.[1]


August 11, 2016.


Correction Officer.  Public Employment, Assault pay benefits.


On January 21, 2008, while working for the defendant Department of Correction (department), the plaintiff, Mark Marchand, sustained a knee injury when he intervened to protect a fellow employee from an assault by an inmate.  As a result of the injury, Marchand began to receive workers' compensation benefits, pursuant to G. L. c. 152, as well as assault pay, pursuant to G. L. c. 30, § 58.  On November 19, 2010, after a hearing, the department's acting commissioner determined that Marchand was medically unfit for duty and separated him from employment as of that date.  Although Marchand continued to receive workers' compensation benefits until July 4, 2013, the department stopped paying assault pay as of the date of Marchand's separation from employment.[2]

Marchand then commenced this action against the department and the Commonwealth's Executive Office of Health and Human Services, Division of Human Resources, seeking a declaration that he was entitled to continue receiving assault pay for so

_____

[1] Executive Office of Health and Human Services, Division of Human Resources.

[2] Marchand initially received benefits pursuant to G. L. c. 152, § 34 (temporary total disability), from January 21, 2008, until July 10, 2008, and then, from July 11, 2008, until July 4, 2013, received benefits pursuant to G.L. c. 152, § 35 (partial disability).

long as he was receiving workers' compensation benefits -- that is, until July 4, 2013.  A judge in the Superior Court agreed. He allowed Marchand's cross motion for summary judgment; denied the defendants' motion; and ordered that judgment enter declaring that Marchand was entitled to assault pay retroactive to November 19, 2010, and continuing through July 4, 2013.  The Appeals Court affirmed the judgment, in a memorandum and order issued pursuant to its rule 1:28.  See Marchand v. Department of Correction, 87 Mass. App. Ct. 1127 (2015).  We allowed the defendants' application for further appellate review.

The single question before us is whether a Commonwealth employee entitled to receive assault pay pursuant to G. L. c. 30, § 58, fourth par., is entitled to continue receiving such pay even after he separates from employment so long as he is entitled to workers' compensation benefits pursuant to G. L. c. 152, or whether his right to assault pay ceases with his separation from employment.  The Appeals Court has previously interpreted the relevant provisions of G. L. c. 30, § 58, to mean the former.  See Moog v. Commonwealth, 42 Mass. App. Ct. 925, 927 (1997).  We conclude, however, that the latter is the better interpretation -- in short, that assault pay is contingent on continued employment.

When a Commonwealth employee injured in the course of employment is entitled, pursuant to G. L. c. 152, to workers' compensation benefits, G. L. c. 30, § 58, provides a means for the employee to continue to receive full pay while absent from work as a result of the injury.  Generally, as set forth in first three paragraphs of § 58, the injured employee may use accrued sick leave to receive full pay.[3]  Pursuant to the fourth

---

[3] The first three paragraphs of G. L. c. 30, § 58, provide:

"Any employee of the commonwealth eligible to receive workers' compensation under [G. L. c. 152] who sustains injuries while in the employ of the commonwealth and who has sufficient sick leave credits accrued shall be granted leave of absence with pay for each working day he is absent from his duties because of such injuries until he returns to work or until the case has been approved by the industrial accident board.

"Workers' compensation for such period shall be refunded to the state treasurer or spending agency of the commonwealth.  The payment by the industrial accident board for such period shall constitute the total refund and the

paragraph of § 58, however, when the employee is injured as a result of an act of violence by a patient or prisoner in his custody, i.e., as a result of an "assault," the employee will receive full pay "without such absence being charged against available sick leave credits."[4]  Assault pay is, in other words, intended to be a substitute for the use of accrued sick leave.

There is no question, as the Appeals Court rightly noted in the Moog case, that assault pay and workers' compensation are related benefits.  See Moog, 42 Mass. App. Ct. at 926.  There also is no question that the assault pay provision in paragraph four of § 58 represents a "special provision for certain injured State employees" entitled to workers' compensation benefits under G. L. c. 152.  See Moog, supra.  As the department suggests,[5] however, that "special provision" is just that -- special -- and is an exception to the general rules set forth in the section's first three paragraphs.  The statute essentially provides an added benefit to an employee assaulted in the course of his or her employment, and recognizes that, in such circumstances, the employee should not have to use sick leave to

_____

employee shall be credited with the proportionate part of sick leave credits represented by the workers' compensation paid by the industrial accident board.

"If the industrial accident board refuses to accept jurisdiction over the case the employee shall not be granted leave with pay in excess of his accumulated sick leave credits or vacation leave."

[4] General Laws c. 30, § 58, fourth par., is the assault pay provision and provides:

"Notwithstanding the provisions of this section, an employee who, while in the performance of duty, receives bodily injuries resulting from acts of violence of patients or prisoners in his custody, and who as a result of such injury would be entitled to benefits under said [G. L. c. 152], shall be paid the difference between the weekly cash benefits to which he would be entitled under said [G. L. c. 152] and his regular salary, without such absence being charged against available sick leave credits, even if such absence may be for less than eight calendar days' duration."

[5] For ease of reference, we refer to the defendants collectively as "the department."

maintain full pay.  Sick leave, however, is a benefit provided only to employees, and it reasonably follows that when an employee separates from employment, the assault pay benefit, connected, as it is, to sick leave, ceases.  Nothing in the statute requires or suggests otherwise.  That the now-former employee who had been receiving assault pay continues to receive workers' compensation benefits after separation from employment is of no moment -- those benefits continue for all former employees who are otherwise entitled to them, regardless of whether the employee was entitled to assault pay.[6]

The department properly stopped paying Marchand assault pay benefits pursuant to G. L. c. 30, § 58, as of the date of his separation from employment.  Accordingly, summary judgment for

---

[6] Our conclusion that assault pay ceases with separation from employment is based on our interpretation of G. L. c. 152, § 58.  The department also argues that continued payment of these benefits postemployment is problematic because it could, in some circumstances, result in the employee receiving more than one hundred per cent of his or her salary.  This argument was not a factor in our decision.  We have previously concluded, while considering the assault pay provision of § 58 in a different context, that

> "[i]t would not be unreasonable for the Legislature to provide such a comprehensive benefit for employees who are exposed to an occupational risk of violent injury.  It appears that it is the Legislature's objective to ensure that employees injured by the violence of prisoners or patients do not suffer any loss as a result of such injury."

DaLuz v. Department of Correction, 434 Mass. 40, 49 (2001).  In the DaLuz case, we concluded that a partially disabled employee's assault pay is not "reduced by the amount of the injured employee's earning capacity."  Id.  In so doing, we recognized that this could create an anomaly because a partially disabled employee might recover more than a totally disabled employee, or might earn more than his regular salary if he or she obtained other employment.  Id.  Although our decision here does not create any such anomaly, the point remains that, in drafting the assault pay provision, the Legislature saw fit to provide a "comprehensive" benefit to a certain class of employees -- those who sustain injuries as a result of acts of violence of patients or prisoners in their care -- and that certain anomalies may yet result.

the plaintiff is reversed, and the matter is remanded for entry of summary judgment in favor of the defendants.

<u>So ordered</u>.


       <u>Kirk G. Hanson</u>, Assistant Attorney General, for the defendants.

       <u>Gregory F. Galvin</u> for the plaintiff.